UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

ROGER D. CLARK and
ROBERTA J. CLARK,

         Debtors.

Case No. 07-23390

Chapter 13
_____

MEMORANDUM DECISION ON TRUSTEE'S MOTION TO DISMISS
_____

      Before the court is the standing chapter 13 trustee's motion to dismiss the case due to the debtors' failure to propose a feasible confirmable plan. The trustee's motion is based on the assertion that the debtors, in performing the "means test" calculation, are not allowed to take a vehicle ownership expense deduction for a vehicle that they own free and clear.

      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), and the court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

FACTS

      The facts of this case are undisputed. The debtors filed a voluntary petition under chapter 13 of the Bankruptcy Code on May 3, 2007. On the same day, the debtors filed their schedules, plan, and Official Form B22C – Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income. The debtors scheduled unsecured debt of approximately $30,841.71. Their amended plan proposed to pay $76.92 bi-weekly from Roberta's payroll and $100.00 weekly from Roger's payroll, totaling $599.99 monthly.

      When a trustee objects to confirmation, a plan must pledge all projected disposable

income during the applicable commitment period. 11 U.S.C. § 1325(b)(1)(B). Pursuant to the information contained in the debtors' Form B22C, the debtors are "above median debtors" and as such they are required to calculate disposable income pursuant to 11 U.S.C. § 1325(b)(3). To apply this section, reference must be made to 11 U.S.C. § 707(b)(2), which limits their deductions from income to the standards set forth in that section, rather than their actual expenses on Schedule J. Their Form B22C reveals that the debtors have monthly disposable income of $59.67, while their Schedule I and Amended Schedule J reflect monthly net income over expenses of $698.83.

The debtors have two vehicles – a 1999 Ford Ranger that they value at $4,000.00, and a 1992 GMC Safari Van valued at $500.00. The Ranger is subject to a $4,977.00 lien. The Safari is owned free and clear of any liens. The debtors took a $358.00 deduction on Line 27 of Form B22C for transportation expenses based on the operation of two or more vehicles. The debtors also took the deductions for ownership expenses for both vehicles; $471.00 for the first car, the paid for Safari, and $252.83 ($332.00 minus $79.17 monthly payment) for the second car, the Ford Ranger.

DISCUSSION

Expense deductions to be used in the calculation of disposable income are determined pursuant to section 707(b)(2)(A)(ii), (iii), and (iv). The portion of section 707(b)(2)(A)(ii)(I) pertinent to the issue in dispute is:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the

2

debtor in a joint case, if the spouse is not otherwise a dependent....

11 U.S.C. § 707(b)(2)(A)(ii)(I).

In addition, a debtor may deduct payments on secured indebtedness under section 707(b)(2)(A)(iii), which provides as follows:

> (iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of–
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
> divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii).

The practical difference is that if a debtor can deduct a set amount for ownership expense on lines 28 and 29 of the means test form, total deductions on line 52 will increase, and monthly disposable income, the amount the debtor must provide to unsecured creditors over the course of the plan, on line 58 will decrease. The amount of secured debt payments is deducted on line 47. The standard ownership expense deduction is adjusted at lines 28 and 29 so the actual debt payments reduce the ownership expense deduction (not below zero), but they are deducted in full on line 47. Thus, the secured debt is not double deducted. *See* Form B22C.

There is a significant split of authority, which appears to be growing almost daily, among courts regarding whether a debtor who owns a vehicle free and clear of any liens is entitled to the vehicle ownership expense deduction set forth in the IRS standards. In this district alone, two other bankruptcy judges have published cases allowing such a deduction, and one district judge that has concluded to the contrary. A review of the published cases discloses that different

3

courts across the country have applied rigorous, thoughtful analyses and time honored statutory construction principles to the issue and have still come out with diametrically opposed conclusions. This alone makes it obvious that the "plain meaning rule" will not work here. Lack of agreement has led to considerable uncertainty among the practicing bar, which encourages the practice of bringing the matter before each available court, with the temptation to engage in forum shopping if inconsistent rulings ensue. It also results in inconsistent treatment of chapter 13 debtors across the country and within a particular district.

Courts that have held that a debtor cannot deduct an ownership expense for a vehicle owned free and clear include: *In re Ransom*, ___ B.R. ___, 2007 WL 4625248 (B.A.P. 9th Cir. Dec. 27, 2007); *Fokkena v. Hartwick*, 373 B.R. 645 (D. Minn. 2007); *Matter of Ross-Tousey*, 368 B.R. 762 (E.D. Wis. 2007); *In re Canales*, 377 B.R. 658 (Bankr. C.D. Cal. 2007); *In re Brown*, 376 B.R. 601 (Bankr. S.D. Tex. 2007); *In re Howell*, 366 B.R. 153 (Bankr. D. Kan. 2007); *In re Ceasar,* 364 B.R. 257 (Bankr. W.D. La. 2007); *In re Slusher*, 359 B.R. 290 (Bankr. D. Nev. 2007); *In re Devilliers,* 358 B.R. 849 (Bankr. E.D. La. 2007); *In re Harris*, 353 B.R. 304 (Bankr. E.D. Okla. 2006); *In re Oliver*, 350 B.R. 294 (Bankr. W.D. Tex .2006); *In re Carlin*, 348 B.R. 795, (Bankr. D. Or. 2006); *In re Lara*, 347 B.R. 198 (Bankr. N.D. Tex. 2006); *In re Barraza*, 346 B.R. 724 (Bankr. N.D. Tex. 2006); *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006).

Numerous courts have gone the other way, holding that the debtor may deduct the ownership expense for a vehicle that is not financed or leased. *E.g., In re Wilson*, 373 B.R. 638 (Bankr. W.D. Ark. 2007); *In re Vesper*, 371 B.R. 426 (Bankr. D. Alaska 2007); *In re Armstrong*, 370 B.R. 323 (Bankr. E.D. Wash. 2007); *In re Chamberlain*, 369 B.R. 519 (Bankr. D. Ariz.

4

2007); *In re Swan*, 368 B.R. 12 (Bankr. N.D. Cal. 2007); *In re Billie*, 367 B.R. 586 (Bankr. N.D. Ohio 2007); *In re Watson*, 366 B.R. 523 (Bankr. D. Md. 2007); *In re Sawdy*, 362 B.R. 898 (Bankr. E.D. Wis. 2007); *In re Zak*, 361 B.R. 481 (Bankr. N.D. Ohio 2007); *In re Wilson*, 356 B.R. 114 (Bankr. D. Del. 2006); *In re Haley*, 354 B.R. 340 (Bankr. D. N.H. 2006); *In re Grunert*, 353 B.R. 591 (Bankr. E.D. Wis. 2006); *In re Fowler*, 349 B.R. 414 (Bankr. D. Del. 2006); *In re Demonica*, 345 B.R. 895 (Bankr. N.D. Ill. 2006).

This court's colleague in *Sawdy*, 362 B.R. at 903-11, set forth the various analyses offered by courts faced with the issue: (1) the plain meaning rationale, (2) the unfair results rationale, (3) the ownership/liability distinction rationale, (4) the policy rationale, (5) the applicable versus actual rationale, and (6) the reliance on IRS materials rationale. That court also concluded, as was stated above, that the "plain meaning" rationale was singularly unhelpful, even though courts in both camps regularly stated it applied. The *Sawdy* court also concluded that the unfair results rationale, *id*. at 906-08, and the policy rationale were similarly unhelpful. *Id.* at 910-11. This court concurs. As other courts have observed, it makes no policy sense, and is patently unfair, for a debtor who has one remaining monthly payment to obtain a deduction amounting to $471 on the first car, less 1/60 of the remaining payment, while no deduction at all is available if the debtor paid off the car before filing.

The struggle to interpret "applicable" and "actual," as those words are used in the statute, is the most perplexing exercise. Citing the decision of *In re Fowler*, 349 B.R. at 418, the court in *Sawdy* observed that:

> the [ *Fowler* ] court discussed the fact that Congress said that the debtor's monthly expenses for categories of expenses listed in the National and Local Standards "shall be the *applicable* monthly expense amounts specified under the National and Local

5

> Standards." The *Fowler* court went on to note that in the very next part of that same sentence of section 707(b)(2)(A)(ii)(I), Congress said that the debtor's monthly expenses "for the categories specified as Other Necessary Expenses" were the debtor's "*actual*" expenses. This use of the word "applicable" in the context of some expenses and "actual" in the context of other expenses led the *Fowler* court to conclude that a debtor should be allowed to deduct the Local Standard amount for ownership of a vehicle regardless of whether he had a note or lease payment
>
> . . .
>
> This argument leads to the conclusion that where Congress used the word "actual," it meant for the debtor to deduct only the amount the debtor actually had to pay for that particular expense. Where, in contrast, Congress used the word "applicable," it must have meant something other than the actual payment the debtor has to make each month. This begs the question – what else could Congress have meant by the word "applicable?"

*Sawdy*, 362 B.R. at 911 (citations omitted). The *Sawdy* court, in agreement with *Fowler*, further reasoned that had Congress wanted to use the National and Local Standards as a cap on a debtor's expenses, it would have worded the statute differently – possibly stating that the debtor could claim actual monthly expenses or the Local Standard, whichever was less, as the IRS Manual did. *Id*. at 912.

> Another colleague of this court framed the conflict as follows:
>
> The issue boils down to the meaning of the phrase "applicable ... amounts specified under the Local Standards." One argument is that "applicable" means applicable to a particular debtor who owns a vehicle subject to a lien. On the other side are those who argue that "applicable" means the region where the debtor lives or the number of vehicles owned by the debtor (the standards allow deductions for up to two). The bankruptcy courts that have analyzed this issue are split.

*In re Grunert*, 353 B.R. 591, 592 (Bankr. E.D. Wis. 2006). After reviewing both lines of cases, the *Grunert* court concluded that the IRS Local Standards are fixed *allowances,* and not caps on a debtor's *actual* expenses, and therefore permit a debtor to take a reduction for an ownership expense of a vehicle even if the debtor owns the vehicle free and clear and has no actual payments for the vehicle. In ruling for the debtor, the *Grunert* court quoted extensively from *In*

*re Farrar-Johnson*, 353 B.R. 224 (Bankr. N.D. Ill. 2006). *Farrar-Johnson* did not involve a transportation expense, but instead an analogous issue regarding a means test reduction for a housing expense. The debtors took a Local Standards reduction for a mortgage/rent expense, even though the debtors lived in military housing and did not actually have a mortgage/rent expense. In holding for the debtors over the trustee's objection, the court examined the statutory context for the terms "applicable" and "actual" in section 707(b)(2)(A)(ii)(I):

> Section 707(b)(2)(A)(ii)(I) permits a debtor to claim "the applicable monthly expense amount" under the Local Standards. Read in isolation, "applicable" is ambiguous, meaning simply: "That can be applied; appropriate." *American Heritage Dictionary* 89 (3rd ed. 1996); *see also Webster's Third New Int'l Dictionary* 105 (1981) (defining "applicable" as "capable of being applied: having relevance"). An expense could be "appropriate" for a debtor to claim because he actually incurs that expense. It could also be "appropriate" to claim because he lives in a certain state and county and has a household of a certain size, putting him in the right box on the Local Standards chart.
>
> Statutory terms, though, are never read in isolation; they are read in the context in which they appear. Section 707(b)(2)(A)(ii)(I) defines monthly expenses not only as a debtor's "*applicable* monthly expense amounts" under the "National and Local Standards" but also as the debtor's "*actual* monthly expenses" for the categories the IRS specifies as "Other Necessary Expenses." Congress drew a distinction in the statute between "applicable" expenses on the one hand and "actual" expenses on the other. "Other Necessary Expenses" must be the debtor's "actual" expenses. Expenses under the "Local Standards," in contrast, need only be those "applicable" to the debtor – because of where he lives and how large his household is. It makes no difference whether he "actually" has them.

*Farrar-Johnson*, 353 B.R. at 230-31 (certain citations omitted).

By contrast, the district court in this district interpreted Congress' use of the word "applicable" in section 707(b)(2)(A)(ii)(I) to limit eligibility for the various expense amounts specified under the National and Local Standards to those debtors for whom the particular expense actually applies. *Matter of Ross-Tousey*, 368 B.R. 762, 765 (E.D. Wis. 2007). In other words, a court must first determine whether the specific debtor has such an expense and only

7

then permit the debtor to claim the amount set forth in the National or Local Standards. The *Ross-Tousey* court explained its reasoning as follows:

> Instead of viewing "applicable" and "actual" as having virtually opposite meanings, another reading of the statute would allow a debtor to deduct the auto expense listed in the Standards *if* the debtor actually had an auto expense in the first place. This reading gives meaning to the distinction between "applicable" and "actual" without taking a further step to conclude that "applicable" means "nonexistent" or "fictional." Under this reading, it is true that the debtor's "actual" expense does not control the *amount* of the deduction, but the debtor must still have *some* expense in the first place before the Standard amount becomes "applicable." The term "applicable" merely means, in this context, that when a debtor has an automobile ownership expense, his deduction is not based on that actual expense but on the applicable expenses listed in the Standards. As another court has recently concluded, "[i]f a debtor does not own or lease a vehicle, the ownership expense is not 'applicable' to that debtor."

*Id.* at 765 (citations omitted). Under this reasoning, a debtor who makes transportation ownership payments is entitled to deduct the amount fixed under the Local Standards. The district court concluded that the terms "applicable" and "actual" are not interchangeable, but rejected the conclusion that the two terms must be wholly exclusive of each other. Rather, the court read the term "applicable" in section 707(b)(2)(A)(ii)(I) to require that the debtor make some lease or loan payment on a vehicle in order to be entitled to claim a deduction for transportation ownership expenses.

This court finds the reasoning of *Saudy* and *Grunert* more persuasive. Taking an even longer look at the overall statute and the form that supports it, the numbers supplied by the IRS for certain expenses might be the same for tax collection and bankruptcy purposes, but there are important differences. The IRS Manual is clear that a taxpayer cannot deduct a set ownership expense unless s/he has such payments, and then there is a cap, i.e., the lesser amount of the payments on the secured debt, the lease payments, or the designated allowance. The obvious

8

policy rationale is that the taxpayer who is the target of collection can only drive a car that is adequate, not luxurious. The bankruptcy statute does not use that same clear language. Bankruptcy debtors, as opposed to tax debtors, get to deduct the full amount of secured debt. Bankruptcy law is more friendly than tax collection policies to the interests of secured creditors, who might not want to repossess the luxury car, which is probably worth less than the debt. Bankruptcy law promotes the concepts of reorganization and a fresh start; tax law does not. Congress could have established a cap by using the same words the IRS Manual uses, but it did not. The IRS allowances provide numbers that are researched and updated regularly, so they are useful to incorporate in bankruptcy law for certain purposes, but that is the extent of it.

The way the ownership expense deduction acts in practice, when it is undeniably allowable, militates for its application to debtors who own cars free and clear. First, it is called an "ownership expense," and the debtor owns a car. Thus, the deduction "applies." Second, if the average car payment is less than the deduction amount, $471 for the first car and $332 for the second, the debtor gets an allowance for which there is no expense. In this case, the Clarks's car payment for their second car is only $79.17, so that deduction is unchallenged. In fact, the Clarks could switch the designation of car 1 and car 2, and pick up an extra $139 (the difference between the $471 allowed for the first car and $332 for a second car) on line 28 that would not be challenged by the trustee. Congress must have had a reason for allowing the ownership deduction in calculating the means test formula for debtors with modest payments, perhaps as some courts have posited, because the debtors may need replacement transportation during the course of a chapter 13 plan. Owners of cars without liens would have the same need. Whatever the reason for different policies involving tax collection and chapter 13 – and those policies are

9

decidedly different – the IRS cap language was not used in the bankruptcy statute. It does no violence to the interpretation of the statute to treat similarly situated debtors similarly, and this court will do so.

For the reasons discussed above, the trustee's motion to dismiss is denied. A separate order consistent with this decision will be entered.

February 14, 2008

Margaret Dee McGarity<br>
Chief Judge, U.S. Bankruptcy Court